CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

NOV 2 5 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL L. SCHROEDER, ) | |
| ) | Civil Action No. 7:08cv00468 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. James C. Turk |
| ROANOKE COUNTY SCHOOL BOARD, ) | |
| ) | Senior United States District Judge |
| Defendant. ) | |

The matter is presently before the court on Defendant Roanoke County School Board's ("RCSB") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 6). Plaintiff Michael L. Schroeder ("Schroeder"), proceeding pro se, initially brought this action seeking unspecified relief for alleged violations of Title VII of the Civil Rights Act of 1964. Following the RCSB's filing of its Motion to Dismiss, Schroeder filed responsive documents (Docket No.'s 10 & 14), and the court heard oral argument in chambers on October 30, 2008. Both parties presented materials outside of the pleadings for consideration, and thus the court will treat RCSB's motion as one for summary judgment. Fed. R. Civ. P. 12(d) (2008). For the reasons that follow, the court will grant the RCSB's Motion for Summary Judgment in its entirety.

I.

RCSB first hired Schroeder in August 2007 as an instructional aide at Herman L. Horn Elementary School ("Herman Horn"). On September 11, 2007, Susan Reynolds ("Reynolds"), Principal at Herman Horn, and Susan Brown ("Brown"), Assistant Principal at Herman Horn, met with Schroeder to discuss allegedly inappropriate behavior, particularly Schroeder's hugging of students. According to Schroeder, Reynolds informed him during this meeting that the school employed an official "zero-tolerance" hugging policy for all teachers. Reynolds also informed

him that the school administration only enforced the policy for male teachers. As a result, Reynolds strictly forbade Schroeder from hugging the students because he was male.

During the months that followed, Reynolds met with Schroeder again on a series of occasions to discuss other incidences of inappropriate behavior. Those meetings included:

- On September 24, 2007, Reynolds met with Schroeder to reprimand him for smoking in the school parking lot, for speaking inappropriately to kindergarten students, and for inaccurately completing his timesheets;

- On September 27, 2007, Reynolds met with Schroeder to discuss various school board policies and the need to observe assigned work hours;

- On November 7, 2007, Reynolds met with Schroeder to reprimand him for leaving a cigarette lighter in a special education resource room;

- On November 8, 2007, Reynolds met with Schroeder to develop an "improvement plan" which required Schroeder to leave his work area secure upon completion of all assignments, to exercise sound judgment in making decisions regarding students, and to demonstrate appropriate conduct around students;

- On December 4, 2007, Reynolds met with Schroeder about a number of alleged inappropriate incidents including: showing the elementary students a drawing regarding terrorist events, claiming that he was an undercover Federal Bureau of Investigations Agent, telling a staff member during a fire drill that he wanted to videotape the fire drill to show news networks "all the little burning children coming out of the school," and speaking inappropriately to a student about his bathroom activities.

David Trumbower ("Trumbower"), Supervisor of Classified Personnel for the RCSB, was also present at several of these meetings. Following the group's meeting on December 4, 2007, Reynolds recommended to Trumbower that the RCSB terminate Schroeder's employment. Trumbower agreed with this recommendation, and Reynolds, Trumbower, and Brown met with Schroeder again on that same day to effect the termination. Trumbower initially offered Schroeder the opportunity to resign. When Schroeder refused, Trumbower fired him, effective immediately.

Pursuant to established grievance procedures for all RCSB employees, Schroeder appealed his termination to Thompson Hall ("Hall"), Director of Personnel for the RCSB. During a subsequent "due process hearing" on the issue, Hall heard a recitation of the reasons for Schroeder's dismissal. As stated by Reynolds and Trumbower, the school administration recommended Schroeder's termination because of his consistent failure to meet the school's expectations, because of his inappropriate conduct with students, and because of his inability to meet the "improvement plan" as presented to him by Reynolds. Hall then gave Schroeder an opportunity to present any additional information and/or make any argument on his own behalf. After due deliberation of the facts and circumstances underlying the termination, Hall concurred with the school administration's recommendation and upheld Schroeder's termination.

Schroeder now contends in his Complaint that Reynolds, with the approval of the RCSB, fired him for violating the alleged discriminatory hugging policy. Schroeder alternatively claims that his termination was due to his opposition to the hugging policy. In support of these allegations, Schroeder claims that he contacted Trumbower after the initial meeting with Reynolds in an attempt to provide some resolution to the inappropriate behavior allegations. The four apparently met on October 2, 2007, and again on October 4, 2007. According to Schroeder, Trumbower supported him throughout these meetings and ultimately concluded that Schroeder had done nothing to require the inclusion of a disciplinary letter in his personnel file. Trumbower also told Schroeder "what an asset [he] was to the school and that [the administration] needed more men [like Schroeder] at [Herman Horn]." This response allegedly "infuriated" Reynolds, and Schroeder now claims that Reynolds attempted from that point forward to "figure out a way to get rid of [him] at any cost." Schroeder also claims that the incidents used to justify the termination were "totally hearsay and not based on facts."

## II.

According to Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside of the pleadings are presented to and not excluded by the court in a motion to dismiss, the court must treat the motion as one for summary judgment. Fed. R. Civ. Pro. 12(d) (2008)[1]; see also Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991) (converting a motion to dismiss into a motion for summary judgment applies only to a motion made pursuant to Rule 12(b)(6)). Before a court may properly convert a motion to dismiss to a motion for summary judgment, however, the court must provide all parties reasonable notice and the opportunity to present any additional material made pertinent by the conversion. Fed. R. Civ. Pro. 12(d) (2008); see also Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (quoting Johnson v. RAC Corp., 491 F.2d 510, 513 (4th Cir.1974)) (The term "reasonable opportunity" requires that all parties be given "'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery."). The necessity of this notice stems from a recognition that, although the two motions are functionally equivalent in their potential result, they are not the same in practice. Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989). Notably, while Rule 12(b)(6) motions to dismiss are decided solely on the pleadings, a motion for summary judgment may rely on additional outside evidence. Id. Sufficient notice thus ensures that the opposing parties will bring genuine issues of material fact to the trial court's attention by affording the nonmoving party an opportunity to "marshal its resources" and rebut the motion for summary

---

[1] Federal Rule of Civil Procedure 12(d) states as follows:

> Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. Pro. 12(d) (2008).

judgment with every factual and legal argument available. Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 850 (11th Cir. 1986).

Where one of the litigants proceeds pro se, a number of courts have found that more explicit notice is required before a motion to dismiss can be converted into a motion for summary judgment. See e.g., Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (error where district court failed to explain to pro se plaintiff that the conversion of a motion to dismiss into a motion for summary judgment entitled plaintiff to file counter affidavits or other responsive material). This is particularly important where a pro se litigant's failure to file counter-affidavits or other responsive documents might result in the court's entry of summary judgment against him. Id., see also Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (notice must be sufficiently clear to be understood by a pro se litigant and calculated to apprise him of what is required under Rule 56).

In the instant case, the court gave both reasonable and explicit notice of its intention to convert Defendant's Motion to Dismiss to a Motion for Summary Judgment before and during the hearing on October 30, 2008. The Clerk's Office mailed Schroeder a Roseboro Notice on September 3, 2008, stating that Plaintiff had twenty (20) days to submit "any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding defendants' evidence." The Notice further explained that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." At the commencement of the hearing on October 30, 2008, the court explicitly stated its intention to treat the Motion to Dismiss as one for Summary Judgment. The court justified this decision on the basis that both parties had filed—

and intended to argue—matters outside the pleadings, and the court gave both sides an opportunity to object to the conversion. Neither party did so.

The court, therefore, will hereafter treat Defendant's Motion to Dismiss as a Motion for Summary Judgment. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no dispute as to a material issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c) (2008). In making this determination, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-7 (4th Cir. 1995).

### III.

In the employment discrimination context, a plaintiff may establish a claim for Title VII sex discrimination by satisfying a three-step, or burden shifting, "pretext" method of proof articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). At the onset of this process, the plaintiff must establish a prima facie case of unlawful discrimination. Id. at 802. A Title VII plaintiff meets this burden by showing that: "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Lettieri v. Equant, Inc., 478 F.3d 640, 646 (4th Cir. 2007) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004) (en banc)). Once the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id. If the employer succeeds in doing so, the burden returns to the plaintiff

to show that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. Specifically, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). At this final step, "the burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (citing Hill, 354 F.3d at 285).

Schroeder contends in the instant case that Reynolds employed a discriminatory hugging policy at Herman Horn. Schroeder further contends that Reynolds terminated his employment, with the approval of the RCSB, for violating that policy. The court finds insufficient evidence to support either of these claims.

First, the court finds that Schroeder fails to establish a prima facie case of unlawful discrimination. While the court recognizes that Schroeder was a member of a protected class (male) who suffered an adverse employment action (termination), there is no evidence in the record—beyond Schroeder's own allegations—to support the existence of a discriminatory hugging policy at Herman Horn.[2] There is similarly no evidence to prove that Schroeder "was performing [his] job duties at a level that met [his] employer's legitimate expectations."[3]

---

[2] The best evidence in the record to prove the existence of a discriminatory hugging policy at Herman Horn is an email, written by Schroeder, and sent to Reynolds on September 24, 2007. Email from Michael Schroeder to Susan Reynolds (Sept. 24, 2007, 18:00:11 EST) (on file with court). The email references a meeting held earlier that day between Schroeder and Reynolds to discuss Schroeder's violation of the school's no-smoking policy. Id. It also recounts the "first meeting" held between Schroeder and Reynolds concerning the school's policy regarding the hugging of students. Id. According to the email, Reynolds told Schroeder at that first meeting that the hugging policy was "a zero policy especially for a man." Id. Schroeder remarks back that the policy "should be handled equally and not based on the gender of a person," and that he would appreciate it if Reynolds would consider the violation of the no-smoking policy as his "first infraction." Id. The email received no response from Reynolds, however, and Schroeder has submitted no other corroborating evidence.

[3] In an attempt to prove that he was performing his job duties in a manner that met the RCSB's expectations, Schroeder submitted an email written by him and sent to Trumbower on October 4, 2007. Aff. of Michael L. Schroeder, Exhibit 2. In that email, Schroeder discusses the progress exhibited by one of the special-needs children

Lettieri, 478 F.3d at 646. To the contrary, the record is ripe with examples of Schroeder's recurrent violations of RCSB policies, including violations of Herman Horn's no-smoking policy and having inappropriate conduct with students. The court finds this evidence sufficient to prove that Schroeder was not performing his job duties at a level that met either Reynold's or the RCSB's "legitimate expectations." Id. As such, the court cannot conclude that Schroeder has satisfied his initial burden under McDonnell Douglas.[4]

Even if the court assumes that Schroeder has established a prima facie case, however, he nevertheless fails to offer any evidence to suggest that the "legitimate, nondiscriminatory reason[s]" stated by the RCSB to justify Schroeder's termination are a pretext for discrimination. Lettieri, 478 F.3d at 646. In an abundance of caution, the court granted Schroeder an additional fifteen (15) days following the October 30, 2008 hearing to submit affidavits from other teachers or staff regarding the alleged hugging policy and/or any other discriminatory acts that led to the termination. Schroeder has offered no such evidence. Accordingly, the court finds that Schroeder has neither established a prima facie case for discrimination nor offered any evidence to prove that the legitimate reasons for his firing are a pretext for discrimination. The court will grant summary judgment to the RCSB as to this claim. Hill, 354 F.3d at 298.

## IV.

Title VII also prohibits employers from retaliating against any employee who engages in a protected activity, which federal law defines as either opposing an act of discrimination made

---

under his care at Herman Horn. Id. The email also recounts how a bus driver for Herman Horn called Reynolds to tell her that "the effect [Schroeder] was having on [the] child was unbelievable." Id. The email received no response from Trumbower, however, and Schroeder has submitted no other corroborating evidence. As a result, the court only accepts the email as evidence of Schroeder's own account of his job performance and not necessarily the opinion of Reynolds, Trumbower, and/or the RCSB.

[4] As an additional reason for its finding that Schroeder has failed to establish a prima facie case of discrimination, the court notes that Schroeder failed to offer any evidence to show that his former position as an instructional aide "remained open or was filled by similarly qualified applicants outside the protected class" following his termination. Lettieri, 478 F.3d at 646.

unlawful by Title VII or participating in an investigation under Title VII. 42 U.S.C.A. § 2000e-3(a); see also Hunt v. Nebraska Public Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002). In order to establish a prima facie case of retaliation, a plaintiff must present sufficient evidence to show: "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal connection between the protected activity and the adverse employment action." Hill, 354 F.3d at 298 (citing King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir.2003)). Once the plaintiff establishes a prima facie case, the employer must produce a nondiscriminatory reason for the adverse employment action. Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002). If the employer succeeds in this, the burden shifts back to the plaintiff to show that the proffered reasons were pretextual. Id.

Schroeder's asserted "protected activity" in the instant case is comprised of his actions in response to the purported discriminatory hugging policy. Schroeder claims that once he learned of the policy, he stated his disapproval to Reynolds and contacted Trumbower in an attempt to provide some resolution to the conflict. Schroeder further claims that Trumbower expressed his support for Schroeder's actions during a meeting with Reynolds on September 27, 2007, and this "infuriated" Reynolds to such an extent that she terminated Schroeder's employment.

The court finds these allegations insufficient to establish a prima facie case for retaliation. As stated above, Schroeder fails to offer sufficient evidence to convince the court of the existence of a discriminatory hugging policy at Herman Horn. Even if the court assumes that such a policy exists, however, Schroeder offers no evidence to prove that there was a "causal connection" between his supposed opposition to that policy and his termination. To the contrary, the RCSB has offered numerous alternative and nondiscriminatory reasons to justify the firing. Schroeder argues that these reasons are "totally hearsay and not based on facts," but he does not

offer evidence to support this position. In short, Schroeder has offered no evidence whatsoever to prove a prima facie case or to show that the legitimate "nondiscriminatory reasons" advanced by the RCSB to justify the termination are pretextual. In the absence of this requisite evidence, the court will grant summary judgment to the RCSB as to this claim as well.

V.

In sum, the court finds that Schroeder has failed to offer sufficient evidence to prove a prima facie case for either unlawful discrimination or retaliation. Accordingly, it is hereby **ORDERED** that the RCSB's Motion to Dismiss (Docket No. 6), properly construed as a Motion for Summary Judgment, is **GRANTED** in its entirety. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to Plaintiff and counsel of record for the Defendant.

**ENTER**: This _25th_ day of November, 2008.

_____
Hon. James C. Turk
Senior United States District Judge